We have five cases on the calendar this morning, two patent cases, one from the district court, one from the PTAB, case from the claims court, trademark case from the patent office, employee case from an arbitrator, five different origins. The trademark and the employee case are submitted on the briefs and will not be argued. So we have three argued cases. The first one is Green Mountain Glass v. Saint-Gobain, 2018, 1725, and 1784. Now, Mr. Panikowski. Good morning, Your Honors. The district court committed a fundamental claim construction error that requires reversal of the judgment. The court expunged from the claims a crucial term, unsorted, that the applicant had added by amendment to every claim. Wasn't there an agreement that unsorted mixed is the same as mixed? And wasn't that agreement necessitated by the fact that the claim recites unsorted and then recites said mixed color, which had to be the unsorted mixed, aren't they the same? And during pretrial claim construction, didn't you argue the opposite of what you're arguing now? Your Honor, there was not such an agreement, and Your Honor, we did not argue the opposite. At page 4019 of the joint appendix, there is our original claim construction position. And in our claim construction brief, we said that the term unsorted mixed-colored glass cullet, along with, quote, said mixed-color cullet and the mixed-colored glass cullet, should be construed to mean the same thing. And that meaning would give unsorted meaning here. And in that page, you see that we underlined said and the before mixed-color cullet to emphasize that in each and every claim, the term mixed-color cullet was only being used anaphorically, as this Court recognized in Baldwin graphic and predicate logic, to refer back to the term unsorted mixed-colored glass cullet. But in Claim 20, you don't have any of those preparatory words, do you? Not in the additional dependent limitation of Claim 20, Your Honor. But when you add to Claim 20 the full independent claim, 18, we do have anaphoric uses, because Claim 20 is referring to the obtaining step. And instead of obtaining step, as it says in Claim 20, that step is defined by unsorted mixed-colored glass cullet. Therefore, since the dependent limitation cannot broaden the scope of that claim vis-a-vis the independent claim, the mixed-colored glass cullet referred to in that additional limitation of Claim 20 must be referring anaphorically to unsorted mixed-colored glass cullet. Your Honor, not only is the term unsorted present in every claim, but that term was added by the applicant by amendment as the sole basis for overcoming a prior art rejection. And in these circumstances, Your Honors, especially in the Mangosoft v. Oracle case, this Court has held that the presumption that every term in a claim must be given meaning is at its zenith. In page 140 of the Joint Appendix, the 737 spec provides that the patent method can be used to, quote, decolorize the green component in mixed-colored cullet to make amber glass, or alternatively, decolorize the amber component in the unsorted mixed-colored cullet to make green glass. Does that mean that green glass and amber glass require different inputs? No, Your Honor, it doesn't. The second sentence that you quoted, Your Honor, uses the narrower term, unsorted mixed-colored cullet. The first sentence that you quoted uses the more generic term, mixed-colored cullet. However, unsorted mixed-colored cullet is a subset of mixed-colored cullet, and this Court has held in cases like Union Oil that the specification can contain disclosures that are broader than what's covered by the claims. And it's also instructive, Your Honor, to see how that... You're saying what? You're saying that in sentence one in that site that you're referring to a different process, or are you saying those two sentences refer to the exact same thing, you just used unsorted in one and not in the other? Your Honor, it is possible that the specification means the second thing that you said, when you look at the specification passage here alone, it is not entirely clear whether mixed-colored cullet in the first sentence is being used as a broader term to disclose both sorted and unsorted. But you just argued to me that it was. Your Honor, the claims refer only to unsorted. In this passage, the term mixed-colored cullet can be understood in one of two ways. Either, one, it's being used anaphorically just to refer to unsorted, or, two, it's simply a broader, more generic disclosure that covers unsorted, but then the claims are drawn to something narrower, which is just unsorted. And I think it's instructive, Your Honor, to see how this second sentence in that passage you quoted got into the specification, because in the original specification, the term unsorted was not present at all. And in the amendment to overcome the prior art rejection, the applicant added two sentences, one in the abstract and one here that contained the word unsorted. And what did the applicant say about those sentences, Your Honor? At page 3139 and 3140 of the joint appendix, the applicant said, The title of the invention, the abstract, and the specification of the present application have been amended to clarify that the invention relates to a method of creating recycled glass products of a particular color from unsorted, mixed-colored glass cullet. The district court found that that reference in the specification was reasonably read to be a change that was intended to clarify the prior art, because the examiner seemed to misunderstand what was occurring in the prior art. That's not the same thing as an unambiguous amendment that was intended to disclaim mixed-colored crock pots. Your Honor, there was an unambiguous amendment here that disclaimed sorted, mixed-colored cullet. Well, you refer us to 3139, but on 3142 and 43, at the bottom and the very top, the amended application explains that the 737 patent is different from prior art because it teaches how to produce recycled glass products from, quote, unsorted, mixed-colored glass cullet byproduct of conventional sorting techniques. I put in sorting. How does that affect your argument, that unsorted, mixed-colored cullet is mixed-colored cullet? It hasn't been through the sorting process. Your Honor, that passage is consistent with our argument. Every single time the applicant distinguished the prior art, the applicant used the term unsorted. Moreover, regardless of what the applicant intended, unsorted was added to each and every claim. And what we see the applicant describing at these two pages is that it was not known to use unsorted, mixed-colored glass cullet. Sorted mixed-colored cullet is off the table at this point. It's not part of the claims anymore. How do we know that? One, because every claim was amended to add unsorted. Two, because at pages 3139 and 3140, the applicant used the magic words the invention relates to and defined it solely in terms of unsorted, mixed-colored glass cullet. And in each and every one of the other 16 references to unsorted, mixed-colored cullet in the remarks, including the one that Your Honor just quoted from 3142 to 3143, the applicant was making clear that it was unknown in the prior art only to use unsorted, mixed-colored glass cullet. The applicant never said that it was unknown in the art to use sorted, mixed-colored glass cullet. And under this Court's decisions in Technological Properties Limited v. Huawei and Norium v. by doing less here. Perhaps the applicant could have just argued and traversed the rejection and said, no, you don't understand. This is what mixed-colored cullet means. This is how it's being used in the claims. And we don't know what would have happened if that's what the applicant had done. Maybe we would not be here today because maybe the patent wouldn't have issued. What the applicant chose to do was add unsorted to each and every claim and to clarify that the invention relates to the use of unsorted, mixed-colored glass cullet. Under this Court's precedence in Magasoft, Aspects, Agilent, and Calicrate, this claim term must be given meaning and the District Court erred by failing to give it any meaning in the claims. On pages 29 to 30 of the Blue Brief, you argue that Green Mountain only proved that Cardog decolorized any given batch of glass as a whole, not selectively, for the color of the cullet. How does that argument square with Claim 1 where the whole batch is mixed-colored cullet? Your Honor, it squares with Claim 1 because even though the entire set of ingredients is ultimately mixed together, the claim requires that the decolorizer selectively decolorize a color of the cullet. It doesn't say selectively decolorize a color of the batch. It has to be targeting a color of the cullet. And because Green Mountain Glass didn't present any evidence that tethered the selective decolorization to a color of the cullet itself, as opposed to a color that was perhaps present in the batch, this is another reason why there was no substantial evidence of infringement here. Your Honor, we're into your rebuttal time, but do you want to spend a minute or two on validity? Invalidity? Your Honor, would you like to hear about invalidity? Because otherwise I would prefer to reserve my time for rebuttal. All right. Well, we'll hear the other side, and then you'll be able to respond. Thank you, Your Honor. Mr. Lampton. Thank you, and may it please the Court. To understand the meaning of these. On page 66 of the red brief, you assert that the district court tallied read factors and declared a final score. Was that not a mischaracterization of the district court's analysis? You didn't count them up and do it that way? Actually, Your Honor, I think, in fact, the district court did. I could ask the court to turn to page 35 of the appendix. The district court says, having assessed and weighed each of the read factors, the court concludes that award of enhanced damages is not warranted. Only three factors favor enhancement. Deliberate copying, investigation of good faith belief, and attempts to conceal misconduct. Most of the factors. And then he repeats a good faith belief. That's not telling. No. That was more sophisticated than that. Well, Your Honor, if our characterization is not correct on that, one of the things that we believe is wrong here, and we're on the cross appeal now, and I'd like to get to the main appeal in a second. But one of the things that we think the district court did wrong is the most important factors. The jury found that this was the most egregious conduct, and the district court didn't disagree. The jury found that it was especially worthy of punishment. The district court disagreed. The district court found that there was copying, no good faith belief in invalidity, no good faith belief in non-infringement, and concealment on top of that. If this is not a case in which you would want to have enhancement, it's hard to imagine one year where you would. And when you get to the additional factors, the district court actually did commit clear error. Because, for example, the district court said, hey, remedial efforts count against enhancement here. But it identified no remedial efforts. It said the duration of infringement counts against enhancement here. But it identified nothing that would shorten the period. It basically, infringement lasted basically the whole duration of the patent. And then finally, the district court barely addressed all of the instances of litigation misconduct were brought up. It addressed only one, the false affidavit. And even for that one, frankly, I don't think the court's analysis makes sense just as, yes, there's a false affidavit. Let me go to the main appeal. Sure. The validity. Ardoz said it predates the effective date of the 737 patent. Why was that not so? That Ardoz was using it before? Yes. Yeah. And I think that there's, first, Ardoz's principal evidence on that was two batch records. And those batch records are from a 1996 file. So it's an electronic file that post-dates the priority date. And it's a mysterious folder called old. No one explained the origins of that. The jury was entitled to believe that that wasn't really old batches at all. But even on top of that, the district court gave six different reasons why it didn't anticipate, why it wasn't obvious. The first one is that the sheet that Dr. Carty relied on, and this is page 3470, says cullet. It doesn't say mixed cullet. So it doesn't tell you that Ardoz was using mixed cullet at those two Just cullet. Now, Dr. Carty, their expert, believed that it was mixed-color cullet because more than 10% of the input was cullet. He said, well, if it's more than 10%, it's going to be external, and external is going to be mixed. But that was wrong on both fronts. First, there was other evidence showing batches that included as much as 40% or 50% of cullet that was single-color cullet, internal cullet that was all of one color. And so the district court correctly said the jury, when the burden is clear and convincing evidence, and here they would have to show that no reasonable juror, that every reasonable juror would be compelled to find that they'd met their clear and convincing burden. The district court said the jury could understand that this wasn't mixed-color cullet at all. It was just single-color cullet that was being used in these two batch records. So what is your best evidence in the record that there was a change in procedure or process from pre-1995 to post-1995? Because clearly the basic principle that what infringes also anticipates, if it predates. If it predates, yes. And I should mention also that the analysis of those batch records didn't show any chrome, and chrome would be there if it's mixed-color cullet, because green glass is going to have chrome. And I think there's two things I'd point to, Your Honor. The first is that while RDoS says this process hasn't changed, there is admission after admission that RDoS started using cuprous oxide, which is a decolorizer for green, in 96, 97, 98. That's after the time period, after the priority date. Why are they suddenly using cuprous oxide, the decolorizer for green? The jury could understand that they're suddenly using cuprous oxide for that because now they're using mixed-color cullet, which has a substantial quantity of green, and they need to decolorize that green. So there's a change there, and it's a change that says every time they say, Look, we didn't change our processes. Oh, yes, they did. We moved to cuprous oxide for a very special purpose that helps you deal with mixed-color cullet. The second thing that the evidence says, I'd go to the 1994. Couldn't they enhance their process by dealing better with mixed-color cullet? Sure. Without having changed? And this is all before the jury, and the jury was entitled to decide what was the reason for the change and what they were doing. But one other thing I'd point to is the 1994 Glass Packaging Institute publication, and that appears on page 6373 of the record. That's a 1994 publication, and it says, let's pull that out, 6373. That's the one that says it can't be done. It can't be done. It says, Look, cullet providers basically need it to be separated by color, green, flint, amber. If it's mixed-color cullet, it becomes landfill. But they weren't using other decolorizers before. Yeah, colorizers and decolorizers were known, but they were used for other purposes. For example, you would use colorizers and decolorizers if your raw materials had impurities or excess quantities. So if you're making flint, excess iron could be a problem, and so you might use selenium to get rid of the excess iron in the raw materials. Or if you have single-color cullet you're using and you want to lighten it, you might use decolorizers to lighten that single. But the idea of selectively decolorizing, much less selectively decolorizing and colorizing a remaining cullet, doesn't appear anywhere in the prior art, and it doesn't appear in anything that RDAO was doing. And remember, their proof here is that they're already doing it, is based largely on those two batch records and then oral testimony. But oral testimony is entirely suspect because oral testimony, for example, is a conflicting oral testimony. And it's conflicting oral testimony that the jury was entitled to believe our evidence over their evidence. And again, the burden here is it has to be so overwhelmingly clear that no reasonable juror could believe that they weren't doing it before, so overwhelmingly clear that every juror would be compelled to say that they met the clear and convincing burden in that defense of prior use. And also, I'll also point out that there was an IPR on this, and it wasn't even initiated because it wasn't anticipated and it wasn't in the prior art. Can we go back to the claim construction? Because I have to say, intuitively, there's a lot of appeal to their argument that unsorted mixed-color cullet must mean something different than a mixed-color cullet. Because why put the word in there? Right. And I think there's two pieces of this, and I'll start with unsorted and sorted. To understand what the phrase unsorted mixed-color cullet means, it's helpful to understand what sorted would have meant to somebody in the prior art. And sorted to people in the prior art, to skilled artisans, would have meant separated into the component colors, separated into flint. In other words, no longer mixed. No longer mixed, yes. So if one talks about... Doesn't your own specification say that it's virtually impossible to do that? It's impossible to do it perfectly, but when you talk about single-color cullet, that just has trace amounts. They're basically de minimis or inconsequential. So it can't be done perfectly. But it can be done to the point where sorted single-color cullet is basically cullet that is effectively of a single color and therefore usable like pure single-color cullet. And I want to point to one place, start out with a specification, and in particular column 3, it's appendix 140, column 3. And this actually tells you what skilled artisans would have understood sorted to mean. It's around line 40, and it's talking about the goal of the invention. It says, in this manner, recycled glass in mixed colors is rehabilitated to provide material that is substantially as useful for recycled containers as sorted amber, green glass, or flint glass. So we have mixed-color glass on the one hand, and when it talks about sorted, it says sorted amber, glass, green glass, or flint glass. So sorted is single color. When you flip back to that first column at the bottom, you have the word sorted by color used three times between lines 51 and line 66. Sorted by color. Sorted by color is naturally understood to be sorted into the different component colors. When one sorts mail by zip code, you sort it into the different zip codes or the zip code groups. You don't have one jumble of zip codes and transform it somewhat into a slightly different jumble of zip codes. I think that meaning is also reinforced, before I turn quickly to the prosecution history. It's reinforced by the Glass Packaging Institute document that I referred to before. It makes very clear that when you're talking about sorted, you're meaning sorted into separate colors. So it says, in the first column, it says, citizens should color sort at the curb. That's the easiest and best place to separate glass by color. So sorting is separating the glass by color. And if you move up, it says, glass manufacturers require color that's separated by color. Separate into their colors. So when you talk about sorted glass, it's sorted by color. When you talk about unsorted glass, that's glass that's not sorted by color. It's a jumbled mix. And if you look at the prosecution history, you won't actually see anything referring to some hybrid between unsorted mixed and sorted single color. Those are just the two categories that skilled artisans understood. Would it have unsorted single color if it came from a source, that is, a glass manufacturer which produces window panes, clear window panes, and sent you its fractions? Yes. So you can have, that's treated as sorted because it all comes in. It's like when it's sorted at the curb and the consumers put it out different colors. That's treated as sorted. It would be unsorted in the sense that? In the sense of using it as a verb, as an adjective. It hadn't been sorted, but it is sorted in the eyes of glass makers. But I want to... But that's part of my point, is that you admit that you can never perfectly sort. Yes, and I think that's true. But sorted single color... So why shouldn't the judge have just gone ahead and said what he said from the beginning, which is this gets its play in an ordinary meeting and let the jury decide to what extent the use was unsorted or not unsorted? Well, I think the evidence... The district court understood that the terms unsorted mixed-color collet and sorted... Excuse me, unsorted mixed-color collet and mixed-color collet were used interchangeably. And there was really no dispute as to what constitutes, at least in our view, mixed-color collet. If it's mixture of colors, it's mixed-color collet. If you only have trace amounts, and that was the testimony from Mr. Boosie, their witness, you only have trace amounts, then you can treat it as single-color sorted. And I want to briefly turn to the rejection because I think this is an incredibly important point. First is, on page 4004 to understand the prosecution history, if you turn to page 4004 of the appendix, we have an explanation of how Arda understood the prosecution history. And if you take a look, this is a claim chart describing the claim term mixed-color collet. And the last two columns are defendants' proposed construction and the reason for it. And defendants' proposed construction says, see, unsorted mixed-color glass collet. They're the same thing. And here's the reason why they give. Prosecution history, preliminary amendment, e.g. using unsorted mixed-color glass collet and mixed-color glass collet interchangeably. The prosecution history uses it interchangeably because one skilled in the art would have understood sorted to mean separated by color and unsorted to mean the opposite. So unsorted doesn't mean anything. It doesn't add anything except emphasis. And that was important in the rejection because the examiner made a mistake in the rejection. And this is at page 3040. The examiner said, look, you have one of these references, Hirsch, has everything except mixed-color collet. And in the next sentence, the examiner goes down and says, and since you admit that collet was used in the art, it would be obvious to use mixed-color collet. And the response of the inventor was effectively, hey, wait a minute, that's not right. There's two types of collet here. There's unsorted mixed-color collet and sorted single-color collet. And that's on page 3142. And if you want to see how he was using it and how he overcame the rejection, the very next page, 3143, there is a quote. And he says, there is no indication in the prior art that one skilled in the art would know to use mixed-color glass collet as a starting material. Not unsorted, not just mixed. And that was what he was saying to overcome the rejection. If it's mixed, it wasn't used in the prior art. Is this patent expired?  Is this patent expired? The patent has now expired, yes, Your Honor. Is it being enforced against anyone else? I don't believe so. To my knowledge, no, it isn't. It is an expired patent. I think I've run right through my rebuttal time. But if there are no further questions, I'll reserve the floor. We'll give you two minutes back, only on the cross-field issue if you need it. Okay. Thank you, Your Honor. Mr. Pankowski. Your Honors, Green Mountain Glass's claim construction argument depends on the logical fallacy of the excluded middle. In the passage from the specification on which GMG relies, column three, lines 41 to 44, it is fine to distinguish unsorted mixed-color collet from color-sorted collet, sorted amber glass, sorted green glass, sorted flint glass. But that doesn't mean that there is no distinction between unsorted mixed-color collet and sorted mixed-color collet. You can distinguish all day long between unsorted on the one hand and single color on the other hand. It doesn't mean that those are the only two things in the universe. And what would a skilled artisan reading this patent in light of this prosecution history believe? The skilled artisan would see that the original claims all said mixed-color collet. And then, in response to the examiner's prior art rejection... Where is your record evidence of that? Your Honor, the record evidence of... What a skilled artisan would believe? Your Honor, the record evidence is the entire intrinsic record. Because... Oh, thank you. Yes. Red in light, Your Honor, of this Court's case law in cases like Mangasoth v. Oracle, where the Court looked at the term local memory devices and said that you have to give that claim term meaning under this well-established presumption in the law... Your answer was completely useless, General. I'm sorry, Your Honor. Your Honor, the specific parts of the intrinsic record that inform the understanding of a skilled artisan here would be, one, each and every claim that contains the term unsorted. That's not what I asked you. I asked you what your record evidence was that a skilled artisan understood it that way. Where is the testimony from a skilled artisan saying, I understood it that way, as opposed to your expert who wasn't believed? Your Honor, there was extrinsic evidence put into the record during the follow-up claim construction briefing that the district court received. There was trial testimony from both art as witnesses and third parties and from GMG's witnesses that ARDA and other parties had used sorted mixed-color culling before the priority date of the patent. Your Honor, we are not relying in this appeal on that extrinsic evidence for the understanding of the skilled artisan. What we're relying on, Your Honor, is what the skilled artisan would have believed when it took the intrinsic materials here. And this Court in Phillips, for example, said that in that claim, the term said steel baffles. And the Court said there is therefore a strong presumption that baffles are not inherently made of steel. Likewise, in Magistoff v. Oracle, the Court said there's a strong presumption that local memory device doesn't just mean any memory device. And when the patentee tried to read local out of the claim, this Court said that defect is particularly severe because the term local was added by amendment in order to overcome a prior art rejection. And our facts, Your Honor, are on all fours with the Magistoff case. And it would be unprecedented for this Court to read this limitation unsorted out of the claim term entirely and leave us in a situation where a skilled artisan, a party like ARDA, could look at this patent, see the term unsorted everywhere, and think that that somehow covered sorted mixed-color culling. And that is why, Your Honor, the District Court's claim construction error cannot stand. And it is also undisputed, Your Honor, that once the claim construction error is corrected, judgment as a matter of law is appropriate in ARDA's favor because as the District Court recognized at Appendix Page 18 and GMG does not dispute, ARDA used only sorted culling in its operations. And therefore, this Court will not even need to remand after correcting the claim construction error but instead order JAMAL for ARDA. The other side of the coin is accurate, too. If we agree with the District Court on its claim construction, we don't need to go any further, correct? Your Honor, if you agree with the District Court on its claim construction, then this Court would need to address the other issues that are raised in ARDA's appeal because the selectively non-infringement argument and the invalidity argument do not depend on correcting the claim construction error. In fact, Your Honor, if I may briefly address invalidity, this is a case where... Just a sentence or so. Thank you, Your Honor. In addition to the claim construction error, this is a case where the patent cannot be both valid and infringed. It is undisputed that ARDA was using mixed-color cullet and colorizers and decolorizers in the same way... But it's not really undisputed, is it? I mean, that was a primary factual dispute. Your Honor, it is undisputed based on two facts. One, the way in which GMG's expert proved infringement applied to both ARDA's present process and its prior process. And the part that was undisputed was that there was no change in ARDA's process before the priority date of the patent to after the priority date of the patent. The witnesses consistently testified to that continuity, and there was no evidence contradicting the continuity. There was certain evidence from their expert trying to chip away at the invalidity case, but it remains undisputed that there was no change in the process, and therefore, if GMG's proof was good enough for infringement, it was also good enough to establish invalidity as a matter of law. Thank you, Your Honor. Thank you, counsel. And there's nothing... I count well. There's nothing on the cross-appeal to respond to. So the argument is concluded, and we will sort it out. Thank you, Your Honor. The case is submitted. I counted 12, Mr. Panuccio. Your Honor, may I respond? No, I think the argument is over. 12 sentences. Thank you, Your Honors.